UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHN COTTRELL                                                    Plaintiff

v.                                          Civil Action No. 3:17-cv-00041-RGJ-CHL

DAVE GREENWELL, ET AL.                                           Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff John Cottrell ("Cottrell") alleges violations of various Kentucky laws and seeks relief under 42 U.S.C. § 1983 against Defendants Bullitt County, Kentucky, and Bullitt County Sheriff Dave Greenwell ("Greenwell").  [DE 49].   Defendants move for summary judgment on all claims.  [DE 80-1].  Cottrell moves the Court to reconsider its prior grant of summary judgment on his KRS § 342.197, KRS § 344.010, and 29 U.S.C. § 2601 claims.  [DE 91-1 at 1045].  Cottrell also moves for permission to file an amended response to Defendants' motion for summary judgment.  [DE 91].   All parties filed unopposed motions for leave to exceed the page limits set forth in LR 7.1(d).  [DE 90; DE 94].  Briefing is complete, and the motions are ripe.  [DE 89; DE 91; DE 95; DE 96; DE 98].  For the reasons below, the Court **GRANTS IN PART**, **DENIES IN PART** Defendants' Motion for Summary Judgment [DE 80], **GRANTS** Cottrell's Motion to Submit Amended Combined Response insofar as the Amended Combined Response is permitted but **DENIES** it as to the Motion to Reconsider [DE 91],   **GRANTS** Cottrell's Motion to Exceed Page Limits [DE 90], and **GRANTS** Defendants' Motion to Exceed Page Limits [DE 94].

## I.       BACKGROUND

Cottrell was the Chief Deputy of the Bullitt County Sheriff's Department ("BCSO") from January 2011 to October 2016.  [DE 91-1 at 1021].  Cottrell served under Sheriff Dave Greenwell.

1

*Id.*  In his role of Chief Deputy, Cottrell ran the day-to-day operations of the department and made hiring and policy decisions for the BCSO.  *Id.*; [DE 80-3 at 780-81].

In May 2014, federal agents stopped a Kentucky man in Riverside, California and recovered more than $420,000 from hidden compartments within his vehicle.  [DE 24-2 at 336]. Federal agents determined that the vehicle was registered to Leonard Mattingly ("Mattingly"). [DE 89-2 at 889].  Mattingly operated a car dealership in Bullitt County and was friends with Greenwell.  *Id.*  Federal agents contacted Michael Halbleib ("Halbleib"), captain of BCSO's drug task force.  *Id.*  Based on his conversation with the federal agents, Halbleib believed that they were "trying to tie this vehicle and the Mattinglys into the Mexican cartel."  *Id.*  Cottrell told Halbleib to investigate Mattingly and the relationship between Mattingly and Greenwell.  *Id.*; [DE 24-2 at 337]. Halbleib and his team began surveilling Mattingly's dealership.  [DE 89-2 at 889]. Halbleib believed that Greenwell "tipp[ed] off" Mattingly that they were surveilling his business. *Id.* at 890.  Halbleib periodically communicated with federal law enforcement agents and Larry Fentress, a federal prosecutor in the Western District of Kentucky, about his ongoing investigation. *Id.*

Meanwhile, in August 2016, Cottrell injured his knee at work while arresting a suspect. [DE 91-1 at 1025].  Cottrell sought medical attention and was restricted to desk duty.  *Id.* at 1026. Cottrell relayed this information to the Department's office manager, Myrtle French ("French"). *Id.*  French ask Cottrell to bring in documentation of his injury for his workers' compensation claim.  *Id.*  at 1027.  Cottrell did not immediately provide her with this information, and French complained to Greenwell about Cottrell's delay.  [DE 91-6 at 1107].  The parties dispute whether Greenwell knew that Cottrell intended to file a workers' compensation claim.  [DE 96 at 1262; DE 98 at 1271].

In October 2016, Cottrell received a letter from Greenwell stating that he was terminated for absence without leave.  [DE 91-1 at 1029].  After Cottrell was terminated, Halbleib and other detectives discovered and recovered contraband from his office, including marijuana and pills.  [DE 91-19 at 1207].  Halbleib and Michael Murdoch, another BCSO detective, investigated Cottrell.  [DE 91-11 at 1159].  Based on their investigation, Cottrell was indicted in state court for committing multiple felonies.  [DE 91-1 at 1033].  In March 2019, state prosecutors dismissed all charges against him.  *Id.* at 1034.

Cottrell filed suit in January 2017.  [DE 1].  Defendants removed the case to this Court. *Id.* Defendants moved to dismiss Cottrell's KRS § 61.102, KRS § 15.520, and § 1983 procedural due process claims.  [DE 10].  The Court denied Defendants' motion to dismiss. [DE 38].  Defendants also moved for summary judgment [DE 11] and the Court granted it on Cottrell's KRS § 344.010, KRS § 342.197, and 29 U.S.C. § 2601 claims.  [DE 38].

Defendants now move for summary judgment on Cottrell's remaining claims.  [DE 80].  Cottrell moves the Court to reconsider its dismissal of his KRS § 344.010,  KRS § 342.197, and 29 U.S.C. § 2601 claims.  [DE 91].

## II.    **STANDARD**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Factual differences are not considered material unless the differences are such that a reasonable jury could

find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

### III.   DISCUSSION

Cottrell moves to file an amended response [DE 91] to Defendants' motion for summary judgment. Hearing no objection, the Court grants Cottrell's motion and has considered the amended response as part of its analysis. Both parties also move [DE 90; DE 94] for leave to exceed the page limit established in LR 7.1 (d). The Court grants those motions as well.

**A.    Motion for Summary Judgment**

Defendants move for summary judgment on Cottrell's KRS §15.520, KRS § 61.101, KRS § 337.385, and 42 U.S.C. § 1983 claims. [DE 80-1 at 727].

1.      KRS §15.520[1]

"Federal courts must apply state substantive law, including immunities, when dealing with supplemental state law claims in federal court." *Shepherd v. Floyd Cty.*, 128 F. Supp. 3d 976, 980 (E.D. Ky. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938)). "[A] sheriff is a county official and absent a waiver thereof is cloaked with sovereign immunity when sued in his official capacity." *Harlan Cty. v. Browning*, No. 2012-CA-000148-MR, 2013 WL 657880, at *2 (Ky. App. Feb. 22, 2013). Under Kentucky law, Greenwell is cloaked with sovereign immunity, absent a waiver by the General Assembly. The Supreme Court of Kentucky "will find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Withers v. University of Kentucky*, 939 S.W.2d 340, 346 (Ky. 1997) (citation, formatting, and quotation marks omitted).

"In 1980, the Kentucky legislature enacted what is commonly referred to as the 'Police Officer's Bill of Rights.' The statute provides certain procedural protections to officers employed by local governments that receive appropriations from the Commonwealth's general fund." *Seger v. City of Lancaster*, 930 F. Supp. 2d 821, 822 (E.D. Ky. 2013) (citing KRS §15.520). The General Assembly enacted KRS § 15.520 "[i]n order to establish a minimum system of professional conduct for officers of local units of government of this Commonwealth" and "to deal fairly and set administrative due process rights in certain disciplinary matters concerning those officers of an employing unit of government that participates in the Kentucky Law Enforcement Foundation Program fund administered pursuant to KRS 15.430 and, at the same time, to provide a means for redress by the citizens of the Commonwealth for wrongs allegedly done to them by officers

---

[1] The General Assembly amended KRS § 15.520 in 2018, effective July 1, 2018. Greenwell fired Cottrell in October 2016. [DE 91 at 1029]. Because Cottrell was fired before KRS § 15.520 was amended, and the amendment does not have retroactive application, the 2015 version of KRS § 15.520, not the 2018 version, applies here. *See Elliott v. Lanham*, 540 S.W.3d 353, 353 n.1 (Ky. 2018).

covered by this section." KRS § 15.520(2) (2015 version). "Officer" means "a person employed as a full-time peace officer by a unit of government that receives funds under KRS 15.410 to 15.510 who has completed any officially established initial probationary period of employment lasting no longer than twelve (12) months not including, unless otherwise specified by the employing agency, any time the officer was employed and completing the basic training required by KRS 15.404." KRS § 15.520(1)(h) (2015 version). KRS § 15.520 constitutes a waiver of sovereign immunity if the plaintiff is an "officer." *See Wheeler v. Ward*, No. 319CV00059GNSCHL, 2020 WL 1442904, at *5 (W.D. Ky. Mar. 24, 2020) ("To the extent this statute applies to deputy sheriffs such as Wheeler, it would constitute a waiver of sovereign immunity").

Citing *Elliott*, Defendants argue that KRS § 15.520 only applies to "officers," and deputy sheriffs, like Cottrell, are not "officers" under the statute. [DE 80-1 at 730]. Cottrell contends that *Elliott* is inapt because it interprets the meaning of the 1994 version of KRS § 15.520, not the 2015 version. [DE 91-1 at 1040-41]. Cottrell also contends that he is, in fact, covered under KRS § 15.520. *Id.*

In *Elliott*, the Kentucky Supreme Court held that deputy sheriffs are not "police officers," as the term is used in the 1994 version of KRS § 15.520. *Elliott*, 540 S.W.3d at 356. Although the *Elliott* court's statements about the 1994 version of KRS § 15.520 do not apply here (to the 2015 version and its application to "officers"), its discussion of the General Assembly's intent in enacting KRS § 15.520 does:

> In making this determination, we take note of the traditional differences and distinctions between sheriffs' departments, sheriffs, and sheriffs' deputies on one hand, and police departments and police officers on the other. We also take note of the fact that KRS 15.520 was first enacted in 1980, while the specific due-process protections afforded to sheriffs' deputies outlined throughout KRS 70.260 through 70.273 were first enacted in 1992 and beyond. If the legislature truly meant for

6

KRS 15.520 to apply to all law enforcement personnel, it would not have had to create a separate statutory framework for due-process rights afforded to sheriffs' deputies because KRS 15.520 appears to provide greater due process protection to police officers than KRS 70.260 through 70.273 provide to sheriff deputies. Both sets of statutes outline specific due-process rights for law enforcement personnel . . . All of this leads us to the conclusion that KRS 15.520 was not meant to provide due process rights to sheriffs' deputies.

*Id.*

Based on the Kentucky Supreme Court's broad statements about the General Assembly's intent, the Court finds that the General Assembly did not intend for the 2015 version of KRS §15.520 to apply to deputy sheriffs like Cottrell.[2] *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) ("[F]ederal courts must apply state law 'in accordance with the then controlling decision of the highest state court'") (quoting *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 543 (1941)); s*ee Wheeler*, 2020 WL 1442904 at \*6 (granting summary judgment on plaintiff's KRS §15.520[3] claim because "[a]s the Kentucky Supreme Court concluded in *Elliott*, it is clear that the Police Officers' Bill of Rights was not intended to apply to deputy sheriffs"). Because Cottrell is not an "officer" as the term is defined in KRS § 15.520, he is not entitled to its protections. As a result, his claim fails as a matter of law and the Court must dismiss it.

2. KRS § 61.102

---

[2] Defendants also argue that, even if KRS §15.520 applied to deputy sheriffs, its protections do not apply to Cottrell because "he was not entitled to receive the protections afforded by KRS §15.520 because the basis for his termination was not an accusation of misconduct or violation of law enforcement procedures." [DE 80 at 735]. But, because the Court has found that KRS §15.520 does not apply to Cottrell, the Court need not consider whether he was afforded KRS §15.520's protections.

[3] In *Wheeler*, the court considered, as the Court does here, the 2015 version of KRS §15.520.

The Kentucky Whistleblower Act's[4] purpose "is to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792–93 (Ky. 2008) (quoting *Meuwissen v. Dep't of Interior,* 234 F.3d 9, 13 (Fed.Cir.2000)). "The Act has a remedial purpose in protecting public employees who disclose wrongdoing. It serves to discourage wrongdoing in government, and to protect those who make it public. The purpose of the Whistleblower Act is clear, and it must be liberally construed to serve that purpose." *Id.* at 793. "In order to prevail in a whistleblower case and survive summary judgment, [the plaintiff], under KRS 61.102, must establish four elements: (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure." *Thornton v. Office of the Fayette County Atty.,* 292 S.W.3d 324, 329 (Ky.App. 2009) (quoting *Davidson v. Com., Dept. of Military Affairs,* 152 S.W.3d 247, 251 (Ky.App. 2004)).

Defendants first contend that Cottrell did not disclose or attempt to disclose information: "Plaintiff had no conversations with Prosecutor Fentress until after his termination. Plaintiff's testimony establishes that the Bullitt County Sheriff's Office was initially contacted by the DEA to share information of potential drug activity by the Mattinglys. Plaintiff did not contact anyone with the intention of disclosing anything, he was merely provided information about the ongoing

---

[4] "No employer shall . . . discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of . . . any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law . . . or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." KRS § 61.101(1).

investigation as part of his job as Chief Deputy of the Sheriff's Office."  [DE 95 at 1225].
Defendants also argue that, even if Cottrell relayed information to federal law enforcement, the
information he relayed to them is not a "disclosure" because federal law enforcement already knew
about it.  *Id.* at 1224.  Cottrell counters: "The DEA initiated the investigation into the Mattinglys;
Cottrell and his team, not the DEA or FBI, discovered and reported actual evidence that Greenwell
was involved, resulting in him also being investigated."  [DE 89 at 872].

The Court finds that there is a genuine issue of material fact about whether Cottrell
disclosed or attempted to disclose  information about Greenwell to federal law enforcement.  First,
Cottrell has presented evidence that his team relayed information about its ongoing investigation
of Greenwell to federal law enforcement.  [DE 89-2 at 890; DE 80-3 at 766-70].  Cottrell's team
investigated the relationship between Greenwell and Mattingly.  [DE 80-3 at 769].  Federal law
enforcement, on the other hand, appears to have been focused on the relationship between
Mattingly and the drug cartel.  *Id.* at 770. Because Cottrell's team was responsible for the
Greenwell-Mattingly side of the equation, it is unclear how federal law enforcement already knew
information about their investigation into Greenwell before Cottrell's team disclosed it to them.
[DE 80-3 at 774-75].  Cottrell has demonstrated that he "support[ed]" and "aid[ed]" Hableib in
communicating with federal law enforcement about Greenwell.  [DE 80-3 at 768; DE 89-2 at 890];
*See* KRS § 61.102(2)  ("No employer shall subject to reprisal or discriminate against, or use any
official authority or influence to cause reprisal or discrimination by others against, any person who
supports, aids, or substantiates any employee who makes public any wrongdoing set forth in
subsection (1) of this section").

Defendants next argue that "Plaintiff cannot seek whistleblower protection for merely
carrying out his everyday job responsibilities as Chief Deputy."  [DE 80-1 at 742 (citing *Willis v.*

Department of Agriculture, 141 F.3d 1139 (Fed. Cir. 1998)). Cottrell responds that the "Whistleblower Act does apply to Cottrell as a Bullitt County Sheriff's Deputy because he risked his personal job security for the advancement of the public good . . . Cottrell not only chose to put his career at risk by refusing to look the other way for a fellow officer, he also risked his personal safety for the public good as the Mattinglys did not hesitate to order hits on their enemies.  Cottrell was not just following orders; he was giving orders and making choices that he knew were to his detriment but for the benefit of the people he swore to protect and serve."  [DE 89 at 873-84].

Because "'the federal Act is similar to the Kentucky Act in almost every respect,' the Kentucky Supreme Court has held that federal Whistleblower Protection Act law can provide direction in Kentucky Whistleblower Act cases."  *Moss v. Kentucky State Univ.*, 465 S.W.3d 457, 460 (Ky. Ct. App. 2014)  (quoting *Commonwealth Dep't. of Agric. v. Vinson,* 30 S.W.3d 162, 169 (Ky.2000)  (formatting omitted).  In  *Willis v. Department of Agriculture,*  141 F.3d 1139 (Fed.Cir.1998), the court noted that "the WPA is intended to protect government employees who risk their own personal job security for the advancement of the public good by disclosing abuses by government personnel." *Id.* at 1144. The court held that there was no protected disclosure under the WPA in that case because the alleged disclosure was no more than the employee carrying out his "everyday job responsibilities." *Id.*  Thus, the employee could not have been said "to have risked his personal job security by merely performing his required duties," which was "expected of all government employees pursuant to the fiduciary obligation which every employee owes to his employer." *Id.*

The Court finds that there is a genuine issue of material fact about whether reporting Greenwell's alleged crimes was part of Cottrell's "everyday job responsibilities" as Chief Deputy. The Court agrees, as does Cottrell, that investigating crimes was part of his job.  [DE 80-3 at 776].

But there is a genuine issue of material fact about whether investigating his boss for potentially participating in a drug conspiracy is part of his "everyday job responsibilities."  And Cottrell is correct: investigating Greenwell—who can and, in fact, did fire him—is a risk to his job security. Because there is a genuine issue of material fact about whether investigating Greenwell was part of his "everyday job responsibilities,"  the Court denies Defendants' motion as to this claim.  *See Huffman v. Office of Pers. Management,* 263 F.3d 1341, 1352 (Fed.Cir.2001)  ("A law enforcement officer whose duties include the investigation of crime by government employees and reporting the results of an assigned investigation to his immediate supervisor is a quintessential example" of conduct that is not protected by the WPA);  *Langer v. Department of the Treasury,* 265 F.3d 1259, 1267 (Fed. Cir. 2001)  (holding that an IRS employee, whose duty it was to review actions taken by the IRS's Criminal Division, did not engage in activity protected by the WPA by informing DOJ officials that their grand jury investigations disproportionately targeted African–Americans); *Willis,* 141 F.3d at 1144  ("Determining whether or not farms were out of compliance was part of his job performance and in no way did it place Willis at personal risk for the benefit of the public good and cannot itself constitute a protected disclosure under the WPA"); *Barrow v. City of Hillview, Kentucky,* 775 F. App'x 801, 811 (6th Cir. 2019)  ("Barrow's and Cook's statements to the FBI pertain to matters of public concern.  Barrow contacted the FBI because he suspected that Caple had committed a crime by moving the backpack off Eadens's property . . . We have previously held on similar facts that reporting police corruption to the FBI is a matter of public concern");  *see also Howell v. Town of Ball,* 827 F.3d 515, 524 (5th Cir. 2016) ("[D]efendants contend that, embedded within the general duty to 'detect and prevent crime,' is the specific obligation to cooperate with outside law enforcement agencies regarding investigations into public corruption . . . But such general, implicit assumptions are not dispositive

regarding the scope of a public employee's 'ordinary' job duties, because such broad assumptions

fail to describe with sufficient detail the day-to-day duties of a public employee's job").

      3.    <u>KRS § 337</u>

      Under KRS § 337.385, an employee may be entitled to liquidated damages, costs, and

attorney's fees if he is denied compensation to which he is entitled.  The statute provides that:

> (1) [A]ny employer who pays any employee less than wages and overtime
> compensation to which such employee is entitled under or by virtue of KRS
> 337.020 to 337.285 shall be liable to such employee affected for the full amount of
> such wages and overtime compensation, less any amount actually paid to such
> employee by the employer, for an additional equal amount as liquidated damages,
> and for costs and such reasonable attorney's fees as may be allowed by the court.

KRS § 337.385(1).

      The term "employee" is defined in KRS § 337.010(2), which provides that:

> As used in  . . . KRS 337.385 . . . , unless the context requires otherwise*: (a)*
> "Employee" is any person employed by or suffered or permitted to work for an
> employer, but *shall not include:* 2. Any individual employed in a bona fide
> executive, administrative, supervisory, or professional capacity."

KRS § 337.010(2)  (emphasis added).

      803 KAR 1:070 § 5(1), (2) provides the definition for an "individual employed in a bona

fide supervisory capacity":

> The term "individual employed in a bona fide supervisory capacity" in KRS
> 337.010(2)(a)2 shall mean any employee: (1) Whose primary duty consists of
> customarily and regularly directing the work of two (2) or more other employees,
> as defined in Section 2(5) of this administrative regulation, where he is employed;
> and (2) Who is compensated for his services on a salary basis at a rate of not less
> than $455 per week, exclusive of board, lodging, or other facilities.

      "Primary duty" is defined as  "the principal, main, major or most important duty that the

employee performs." *Id.* § 15(1)(a).  The Court determines what an employee's primary duty is

based on the facts of the case "with a major emphasis on the character of the employee's job as a

whole." *Id.*  The Court also considers: 1) the relative importance of the exempt duties compared

to other types of duties; 2) the amount of time spent performing the exempt work; and 3) the employee's relative freedom from direct supervision. *Id.* But, "time alone, is not the sole test and nothing in this subsection requires the exempt employee spend more than fifty (50) percent of their time performing exempt work." *Id.* § 15(1)(b).

Here, the parties do not dispute that Cottrell ran the day-to-day operations, made policy-decisions, and was in a decision-making position. [DE 91-1 at 1021]. But, the record also reveals that Cottrell, in his role of Chief Deputy, investigated crimes (including Greenwell's) and indeed, on occasion, arrested suspects. *Id.* at 1022-25. Defendants neither cited 803 KAR 1:070 nor applied it to the facts in the record.[5] *See Early v. Toyota Motor Corp.*, No. CIV A 304-45-KKC, 2007 WL 1461047, at *1 (E.D. Ky. May 16, 2007), *aff'd,* 277 F. App'x 581 (6th Cir. 2008) ("The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact") (citation and internal quotation marks omitted).

The Court cannot determine how important Cottrell's "exempt duties" were "relative to the other types of duties" he performed. Nor does the Court not know how much time Cottrell spent "performing the exempt work." Based on 803 Ky. Admin. Regs. 1:070 and § 337.010(2), and Defendants' failure to demonstrate the absence of a genuine issue of material fact about Cottrell's status as a supervisory employee, the Court cannot find as a matter of law that Cottrell was a "bona fide supervisory employee." As a result, the Court denies Defendants' motion as to this claim. *See Whitewood v. Robert Bosch Tool Corp.*, No. 3:04CV-631-H, 2006 WL 2873426, at *3 (W.D.

---

[5] Nor, for that matter, did Cottrell.

Ky. Oct. 3, 2006), *aff'd*, 323 F. App'x 397 (6th Cir. 2009)  (applying 803 Ky. Admin. Regs. 1:070 and § 337.010(2)).

    4.    <u>§ 1983 Claims</u>

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)  (internal quotation omitted).  To state a claim under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013).

    *a.  Procedural Due Process Claim*

To establish a procedural due process claim under § 1983, a plaintiff must show:

> (1) that [he had] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution [], (2) that [he was] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [him] adequate procedural rights prior to depriving them of their protected interest.

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (internal quotation marks and citation omitted).

To establish a property interest, a plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [defendant] to rescind the benefit."  *Id.* at 410.  A "property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004)  (citations omitted).

Citing KRS § 70.260(9), Defendants argue that "[b]ased upon the position held by Plaintiff as Chief Deputy, he is not entitled to the protections afforded by KRS Chapter 70 . . . Therefore,

Plaintiff cannot establish that he enjoyed a protected property interest in continued employment as the Chief Deputy of the Bullitt County Sheriff's Office. Because no protected property interest exists, Plaintiff's claim of violation of the Fourteenth Amendment fails as a matter of law."  [DE 80-1 at 746].

KRS § 70.260(9) provides:

An ordinance, adopted under subsection (1) of this section by a county or consolidated local government, may exclude deputy sheriffs who serve in policy-making or confidential positions from coverage by the merit system. If the ordinance makes this exclusion, a deputy sheriff who is covered by the merit system and who accepts an appointment in a policy-making or confidential position shall be deemed to have received a leave of absence from the merit system during the incumbency of that position.  If he ceases to serve in a policy-making or confidential position but continues to serve as a deputy, he shall be restored to coverage at the same classification and rank that he held prior to his policy-making position under the merit system. A deputy who is not covered by the merit system at the time he is appointed to a policy-making or confidential position shall be deemed not to be part of the merit system and shall not be included in the merit system when he ceases to serve in that position.

Cottrell testified that as Chief Deputy he was in a "policy-making position."  [DE 80-3 at 780].  Defendants have produced undisputed evidence that Bullitt County enacted an ordinance that excluded "deputy sheriffs who served in policy-making . . . position from coverage," and that based on that ordinance, Cottrell's request for review of his termination by the Bullitt County Deputy Merit Board was denied:

The Bullitt County Fiscal Court, the primary legislative body of Bullitt County, enacted Ordinance No. 13-17 on July 2, 2013. See Bullitt County Fiscal Court Meeting Minutes, Book 40 Page 6; attached hereto as **Exhibit C**. The language of Ordinance No. 13-17 mirrors the statutory language of KRS §70.260(9) stating that "[t]he positions of Captain and above are policy-making positions and are exempted from coverage by the merit system." **Exhibit C.**  In fact, in this case, Plaintiff sought review of his termination by the Bullitt County Deputy Sheriff Merit Board. On November 17, 2016, a letter was sent to Plaintiff from the Chairman of the board stating as follows: "After a review with Board Counsel of applicable state law (KRS 70.260), Bullitt Fiscal Court Ordinance 13-17 creating the Merit Board and setting forth the positions subject to the jurisdiction of the Board, and the Rules and Regulations of the Merit Board establishing the scope of its coverage, it was

> determined by a unanimous vote of the Board that the position of Chief Deputy does not fall within the jurisdiction of the Merit Board and is not afforded coverage under our Rules and Regulations. Therefore, your request for a hearing is denied."

[DE 80-1 at 745-46 (emphasis in original)].

Cottrell argues that, "in the specific context of this case," he had a property interest under KRS § 70.270(1) because he "was the only thing keeping BCSO remotely efficient. He made the schedules and ran the day-to-day activities . . . Terminating [him] was detrimental to the department." [DE 91-1 at 1042]. But, KRS § 70.270(1) does not apply to him because he was in a "policy-making" position and was "excluded from coverage by the ordinance creating the deputy sheriff merit board." *See* KRS § 70.273(5) ("The provisions of KRS 70.260 to 70.273 shall not apply to . . . a deputy in a policy-making or confidential position excluded from coverage by the ordinance creating the deputy sheriff merit board"). The Court finds that Cottrell did not have a "property interest" under KRS § 70.270. Because the Court found above that KRS § 15.520 does not apply to him, the Court also finds that he did not have a "property interest" under it. As a result, the Court grants Defendants' motion as to this claim.

### b.    *Malicious Prosecution Claim*

A plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citation and internal quotation marks omitted).

The parties dispute all elements, but because Defendants have disproved that Greenwell participated in the charging decision and that Cottrell suffered a deprivation of liberty, the Court

need only address those two. *See Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 661 (W.D. Ky. 2013) ("Defendant Smith would succeed on his summary judgment motion if he disproves any one of these essential elements" of a malicious prosecution claim); *see also Celotex Corp.,* 477 U.S. at 323 ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

In order "to be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Hunt v. Wayne County*, M.D. Tenn. No. 1-10-0035, 2012 WL 279482, *4 (Jan. 31, 2012). This is true even for officers who "urge prosecution, but who have no effect on the probable cause determination by the prosecutor." *Jorg v. City of Cincinnati*, 145 Fed. App'x 143, 149 (6th Cir. 2005). Consequently, a defendant "cannot be held liable for malicious prosecution when [he] did not make the decision to prosecute the plaintiff." *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *see also Kinkus v. Village of Yorkville, Ohio*, 289 Fed. App'x 86, 91 (6th Cir. 2008) (finding police officer not liable, even though he completed police report and signed criminal complaint, because those documents were ultimately forwarded to the prosecutor who decided to prosecute).

Cottrell argues that "Greenwell has admitted that he initiated the criminal prosecution into Cottrell in that he made Murdoch and Hableib push it forward, and even if he had not, it cannot be reasonably disputed that he did not influence it given that he directed the investigation." [DE 91-1 at 1044]. In support of this argument, Cottrell cites this portion of Greenwell's deposition:

> Q.  Did you tell Mike Halbleib not to present [the drug case] to the
> Grand Jury?

> A.   No.   Originally Mike Murdoch didn't want to do it, and Mike
> Halbleib didn't want to do it.  I made a call to the state police to try  and get
> them to do it.  They called me back two days later and said no, they weren't
> going to touch it.  So I called Halbleib and Murdoch into the office, and I
> said, "I don't care who does it.  Do it together. We can't [sic] anybody else
> to do it.  Figure all—you two figure out who is going to do what.  We'll
> look into it and figure out what's what.
>
> Q.  Have you heard the grand jury tapes from the initial investigation?
>
> A.  No.

[DE 91-7 at 1140].

Cottrell also cites this question and answer from Murdoch's deposition:

> Q.  Okay, so you don't take issue with the statement that Sheriff
> Greenwell initiated the prosecution of John Cottrell?
>
> A.  Correct.

[DE 91-11 at 1159].

But, in fact, Greenwell testified that he did not instruct Halbleib to charge Cottrell, but only

to investigate him:

> Q.  And you had, at least in the instance of Mike Halbleib, you directed
> him to  charge John Cottrell, investigate and charge that drug case,  and
> you found out he never presented it, correct?
>
> A.  I had  Mike  Halbleib  investigate  it.  Whether  he  was  guilty  or
> innocent  would've  been  determined  by  the  court—but,  Mike
> would've—I don't know what he did or didn't do.

[DE 91-7 at 1140].

And Murdoch explicitly testified that Greenwell did not make him "prosecute" Cottrell:

> Q.  And did you have a conversation with him as well, where you said
> something to the effect of you didn't want to prosecute John, but the sheriff
> was requiring you to do it or something to that effect?
>
> A.  Again, not to those words.  I – I – as I've said all along, I never  wanted
> to prosecute John.  That's – John was a friend prior to some of this, and –

and I didn't want to prosecute him.  *I never said the sheriff made me do it.  It was – I passed it onto the Commonwealth Attorney's office.  They made that decision.*

Q. Well, I mean, when somebody make you – or not making you, if you're given an order, you don't have any other options but to follow it, right?

A. He didn't give me an order. He – he's the one who has to initiate the investigation. We had a conversation sitting in a room – in his office about the pros and cons of passing it off to another agency, or us doing it in-house and the decision was made then.  But again, per our policies, he has to be the one to actually say go forward and investigate.

Q.  And when you say he, just because it –

A.  I apologize.

Q. – it doesn't come across very well on the transcript. You were looking at Sheriff Greenwell?

A. Yes.

[DE 80-7 at 827-28 (emphasis added)].

Defendants contend that "Plaintiff alleges that Defendant Greenwell, despite retiring from the Sheriff's Office in February 2017 somehow took steps to charge Plaintiff with two counts of criminal possession of forged instrument, second degree, two months later. Plaintiff does not indicate how Defendant Greenwell did so after leaving office. Further pushing the bounds of possibility, Plaintiff alleges that Defendant Greenwell was also responsible for the second indictment in which he was charged with additional criminal activity in September 2017, seven months after Defendant Greenwell's retirement."  [DE 95 at 1240-41].  Defendants also contend that "Plaintiff offers no evidence of record or any legal authorities to refute the simple, undisputable fact that Defendant Greenwell did not make, influence, or participate in the decision to prosecute.  The investigation was conducted by deputies Murdoch and Halbleib and the file was

turned over to the Commonwealth's attorney to decide whether or not to pursue charges." *Id.* at 1241.

The Court agrees with Defendants. Greenwell resigned in February 2017 and was federally indicted in April 2017. [DE 91-1 at 1033]. Cottrell was indicted in September 2017 and again in October 2018. *Id.* Cottrell has not explained how Greenwell could have "initiated the prosecution" not only after he resigned as sheriff, but after he was federally indicted for his alleged involvement in a drug conspiracy.[6] *Id.* Indeed, it is hard to fathom that a state prosecutor would take direction from a former sheriff under federal indictment. And Cottrell has not asserted that Greenwell "consulted with" or "pressured" the state prosecutor to file charges against him. *See Kinkus*, 289 F. App'x at 91. But, even assuming Greenwell "initiated the prosecution," Cottrell has failed to establish that Greenwell participated in the charging decision. Rather, based on the record, it appears as though Greenwell initiated the investigation—despite his deputies' reluctance—but did not participate in the charging decision. *See Day v. DeLong*, 358 F. Supp. 3d 687, 706 (S.D. Ohio 2019) ("Plaintiff alleges that DeLong 'had criminal charges brought against Plaintiff,' and 'set in motion legal proceedings.' However, Plaintiff has no evidence DeLong communicated with any prosecutor about the decision to bring charges against Plaintiff, or that she expressed any opinion to prosecutors about whether she felt criminal charges against Plaintiff were appropriate").

Cottrell also argues that he "suffered a deprivation of liberty in that he was prosecuted for years and could not work as a police officer." [DE 91-1 at 1044-45]. Cottrell has neither alleged, argued, nor presented evidence that he was "arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions." *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th

---

[6] The Court notes that Greenwell was acquitted of his federal charges. *See* Andrew Wolfson, Ex-Bullitt County sheriff acquitted of aiding drug trafficking scheme, Courier Journal, (November 8, 2018, 7:02 PM), https://www.courier-journal.com/story/news/2018/11/08/former-bullitt-county-sheriff-acquitted-drug-trafficking scheme/1930917002/.

Cir. 2017);  [*See* DE 49 at 575-76].  *Noonan* is on point.  There, the Sixth Circuit held that Noonan

did not suffer a deprivation of liberty even though

> the police called him in for questioning (twice) and he had to undergo a polygraph
> exam; he had to hire a criminal defense attorney; the court required him to attend
> a status conference; the police/prosecutor withheld his car from him, in impound,
> for over five months; and the false charges caused substantial embarrassment,
> personally and professionally, as he had to reveal this prosecution to his employer;
> all of which inhibited his practice as a lawyer and cost him thousands of dollars.

*Id.* at 462.  Cottrell asserts substantially less than Noonan.  Like Noonan, Cottrell has failed to

demonstrate that he suffered a deprivation of liberty.  *See Phat's*, 918 F. Supp. at 663 (W.D. Ky.

2013) ("Where the plaintiffs were not arrested or incarcerated, and where all charges were dropped

against a plaintiff who was never arrested, courts found that the plaintiff did not suffer a

deprivation of liberty sufficient to satisfy this element of a malicious prosecution claim") (internal

citations omitted);  *Rapp v. Putman*, 644 Fed.Appx. 621, 628 (6th Cir. 2016) (finding no

deprivation of liberty when the plaintiff did not allege that he was seized or otherwise detained

following the issuance of a citation).

## B.     Motion to Reconsider

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer

than all the claims or the rights and liabilities of fewer than all the parties does not end the action

as to any of the claims or parties and may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities."  The Court has the "authority

both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part

of a case before entry of final judgment."  *Rodriguez v. Tenn. Laborers Health & Welfare Fund*,

89 F. App'x 949, 959 (6th Cir. 2004).   "Traditionally, courts will find justification for

reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2)

new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Id.*

Cottrell asserts that the "Court should reconsider Cottrell's Worker's Compensation Retaliation Claim under KRS § 342.197 because discovery supports that Greenwell knew of Cottrell's intention to file a workers' compensation claim." [DE 89 at 880].[7]   The Court previously dismissed this claim, in part, because "Cottrell present[ed] no evidence that French told Greenwell about Cottrell's  intention to file a workers' compensation claim, and the Court declines to infer knowledge on the part of Greenwell simply because French was his office manager."  [DE 38 at 510-11].

Kentucky Revised Statutes § 342.197 forbids an employer from discharging an employee for filing or pursuing a workers' compensation claim.  To succeed on a claim under § 342.197, a plaintiff must show that "(1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006) (quoting *Brooks v. Lexington–Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790 (Ky. 2004)).

Cottrell asserts that "French revealed in her deposition in June of 2019 that she told Greenwell about Cottrell's intention to file a workers' compensation claim before Cottrell's termination." [DE 98 at 1271].  In support of this assertion, Cottrell cites this portion of French's deposition:

> A.  He didn't ask me anything, though, until right before he was terminated.
>
> Q.  Okay.

---

[7] Cottrell requests that the Court reconsider "the portion of its March 18, 2019 Memorandum Opinion and Order granting Defendants' April 4, 2017 Motion for Summary Judgment as to claims arising under KRS § 342.197, KRS § 344.010, and 29 U.S.C. § 2601." [DE 91-1 at 1045].  But he only specifically argues about why the Court should reconsider his KRS § 342.197 claim.  *Id.*  Because Cottrell has not argued why the Court should reconsider the other claims, the Court declines to reconsider them.

> A.  And it even could have been the last day, but I'm not really sure exactly when it was.
>
> Q. Okay. When he asked you, "Did you get anything from John," what did you understand that he was asking for?
>
> A.  Doctor's note, anything—because I had complained to him that I didn't have it.
>
> Q.  You complained to him. You pointed at former Sheriff Greenwell, correct?
>
> A.  Yes, yes.
>
> Q.  So at some point in time you talked to Sheriff Greenwell and said, "I'm still waiting on this who, what, where, and why"—
>
> A.  That was on the 5th.
>
> Q.  – "for John Cottrell."
>
> A.  Yes.  I'm almost positive it was the day before the day of—[Cottrell] come in on the 6th.  I'm sure it was the 5th.

[DE 89-5 at 918; DE 91-6 at 1107].

Unlike Cottrell, the Court does not glean from this testimony that French "told Greenwell about Cottrell's intention to file a workers' compensation claim before Cottrell's termination." Cottrell also argues that it is compelling that she complained to Greenwell about not having the information she needed from Cottrell:

> Q.  But why? Why did you need that information?  Why do you feel like you needed it and because you hadn't had it, it caused you enough of a concern that you had complained to his boss about him not providing that information to you?
>
> A.  Because it was a workers' comp claim.  If you don't turn them in as soon as you do it, you get kicked out.  I mean, they don't just—you have to have the paperwork.

[DE 91-6 at 1107].

French complained to Greenwell that she was still waiting on this information, and testified that she was waiting on it because she needed it for Cottrell's workers' compensation claim. Significantly, however, she did not testify that she told Cottrell that she was complaining about it because she needed it for the workers' compensation claim. Based on the evidence before the Court, it is not reasonable to infer[8] that French told Greenwell about Cottrell's claim.

Cottrell also argues that there "is still an issue of material fact as to whether there was a causal connection between Cottrell's protected activity of attempting to file for workers' compensation and the adverse employment action against him." [DE 98 at 1274]. Because proof of a causal connection can be difficult, Cottrell must, at a minimum, show that "(1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, *and* (2) there is a close temporal relationship between the protected activity and the adverse action." *Upchurch*, 214 S.W.3d at 915 (citations omitted and emphasis added).

Because the Court has found that Cottrell has not shown that Greenwell knew about his claim, Greenwell has also failed to demonstrate that there is a genuine issue of material fact about the first part of the test for the causation element of this claim. Because he has failed to satisfy the first part of the test, the Court need not consider the second. Likewise, because he has failed to establish a *prima facie* case for his workers' compensation retaliation claim, the Court need not consider whether Defendants' reason for terminating him was a pretext for retaliation. *See Witham*

---

[8] Cottrell also asks the Court to infer that he told Greenwell about his workers' compensation claim. [DE 98 at 1272]. The Court is puzzled by the need for inferences in this situation, especially as it seems like Cottrell could have testified during his deposition or sworn in his affidavit that he told Greenwell about this claim. Cottrell's failure to cite to such direct evidence, and his failure to explain its absence, further supports the Court's conclusion that there is not a genuine issue of material fact about whether Greenwell knew about Cottrell's workers' compensation claim.

*v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016) ("If the employee [states a *prima facia* case], the employer must identify 'a non-retaliatory reason for the adverse employment decision'").  As a result, the Court denies Cottrell's motion to reconsider [DE 91].

## IV.   <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS**:

(1)   Defendants' Motion for Summary Judgment [DE 80] is **GRANTED IN PART**, **DENIED IN PART**.

(2)   Plaintiff's Motion to Submit Amended Combined Response to Defendants' Second Motion for Summary Judgment and Motion to Reconsider [DE 91] is **GRANTED insofar as the Amended Combined Response is permitted but DENIED as to the Motion to Reconsider**.

(4)   Plaintiff's Motion to Exceed Page Limits [DE 90] is **GRANTED**.

(5)   Defendants' Motion to Exceed Page Limits [DE 94]  is **GRANTED**.